# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMIL SAMAHA, | ) | |
| | ) | |
| Claimant, | ) | No. 14 CV 7405 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Jamil Samaha ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.]

Pursuant to Federal Rule of Civil Procedure 56, the parties have cross-moved for summary judgment. [ECF No. 13; ECF No. 19.] For the reasons stated below, Claimant's motion for summary judgment is granted and the Commissioner's is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

# I. PROCEDURAL HISTORY

In July 2011 Claimant applied for supplemental security income and disability insurance benefits, claiming a disability onset date of November 1, 2004.[1] (R. 200–08.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 88, 92, 138–39.) Claimant, represented by counsel, appeared and testified before an Administrative Law Judge (the "ALJ") on December 12, 2012. (R. 44–72, 79–82.) A vocational expert also testified. (R. 44, 70–79.)

On April 19, 2013, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that she was not disabled under the Social Security Act. (R. 20–36.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. As an initial matter, the ALJ noted that Claimant met the insured status requirements of the Social Security Act through December 31, 2015. (R. 22.) At step one, the ALJ concluded that Claimant had not engaged in substantial gainful activity since his alleged onset date.[2] (*Id.*) At step two, the ALJ found that Claimant had the severe impairments of coronary artery disease status post coronary artery bypass grafting surgery, and chronic obstructive pulmonary disease. (R. 23.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §404.1520.) (*Id.*)

---

[1] Claimant also filed applications for benefits in 2007 and 2008. (R. 179–99.) Only the 2011 application is at issue in this appeal.

[2] After stating his step one conclusion, the ALJ made note of Claimant's 2004–2011 earnings and indicated that he was holding "in abeyance" any finding as to whether Claimant's work activities during that period constituted SGA for the purpose of determining ineligibility for disability. (R. 22.) This statement appears to contradict the conclusion that precedes it, namely that Claimant had not engaged in substantial gainful activity since his alleged onset date.

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform work at the light exertional level and maintain productive work tasks for up to 98–100% of a normal workday, but with the following restrictions: he could only stand for up to one hour uninterrupted and for up to a total of six hours in an eight-hour workday; he could only occasionally climb ramps and stairs and could never climb ladders, ropes, or scaffolds; he could only occasionally balance, stoop, kneel, crouch, or crawl; he could frequently but not constantly feel, handle, and finger with his left (non-dominant) hand; he could have frequent but not constant exposure to extreme cold, heat, and humidity; and he could not have concentrated exposure to respiratory irritants. (R. 24–25.) Based on this RFC, the ALJ determined at step four that Claimant could not perform his past relevant work of short-order cook. (R. 33.) However, at step five, the ALJ found that Claimant was able to perform other work existing in the national economy, including the jobs of ticket seller, mail clerk, cashier, or ticket taker. (R. 34.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 35.) The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1–3.) *See Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and

whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant asserts that three portions of the ALJ's decision lack the support of substantial evidence. First, he challenges the ALJ's RFC assessment because the ALJ improperly

discounted certain medical opinion evidence. Second, Claimant charges that the ALJ improperly discounted his credibility. Third, he takes issue with the ALJ's step five finding that he is capable of performing jobs that exist in the national economy. The Court agrees that the ALJ's weighing of the opinion evidence and his assessment of Claimant's credibility are both marred by legal error, requiring remand. Claimant's third argument is a further elaboration of his RFC argument and will not be addressed separately.

### A. The ALJ's RFC assessment is not supported by substantial evidence.

Claimant criticizes the ALJ's treatment of the opinion evidence, particularly the 2012 opinion of Claimant's treating cardiologist and the 2011 opinion of a consultative examiner. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). An ALJ must provide "good reasons" for how much weight she gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our ... decisions for the weight we give your treating source's opinion.").

When an ALJ decides for good reasons not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors. These factors include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the

types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). *See* 20 C.F.R. § 404.1527(c), 416.927(c). In general, a physician who has personally examined the claimant is given more credence than one who has only reviewed his medical file. 20 C.F.R. § 404.1627(c)(1). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013.)

In October 2012, Michael L. Smith, M.D., Claimant's treating cardiologist since February 2009, completed a form entitled "Residual Functional Capacity Questionnaire" opining that Claimant had various restrictions which, if accepted in total, would indicate a less-than-sedentary work capacity. (R. 912–13.) When evaluating the opinion evidence, the ALJ gave "little weight" to Dr. Smith's Questionnaire answers and "significant weight" to the opinions of state agency physicians who completed similar forms based on their reviews of Claimant's medical file.[3] (R. 31–32.)

The ALJ' fails to provide a sound explanation for inverting the normal hierarchy of opinion evidence, instead stating reasons grounded in errors of law. First, the ALJ rejected Dr. Smith's 2012 opinions because they were relayed on an RFC Questionnaire form. The ALJ wrote that any opinion "expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician" since the ultimate determination of RFC is a matter reserved for the Commissioner. (R. 31.) This is incorrect. Treating physicians quite often complete check-the-box or fill-in-the-blank questionnaires to express their opinions about their patients' specific abilities and limitations. *See e.g. Jelinek v. Astrue,* 662 F.3d 805, 811

---

[3] The opinions granted "significant weight" are two RFC forms completed by Charles Kenney, M.D. in December 2007 and May 2008, an RFC form completed by B. Whitley, M.D. in September 2011, and a one-sentence affirmation of Dr. Whitley's opinion by Mangala Hasanadka, M.D. dated December 2011. (R. 421–28, 483–90, 568–75, 650.)

(characterizing as "highly relevant" a doctor's assessment of his patient's symptoms and RFC as provided in a questionnaire.) Like all treating physician opinions, those rendered in response to form questionnaires merit controlling weight when they are well-supported and not contradicted by other evidence in the record. *See e.g. Stage v. Colvin,* 812 F. 1121, 1123–24 (criticizing an ALJ's rejection of an RFC questionnaire). Neither the ALJ in his opinion nor the Commissioner in her brief has provided citation to any authority suggesting otherwise.

Compounding the error, the ALJ also misstated the law with respect to the weight afforded to agency doctors who have only reviewed a claimant's medical file. The ALJ wrote that "significant weight" should be afforded to the opinions of such physicians "because their conclusions regarding the nature and severity of the claimant's impairments are deemed expert opinion evidence from a non-examining source… such opinions are entitled to considerable deference." (R. 32.) Again, this inverts the order of priority of opinions provided for in the regulations. All medical opinions are deemed expert opinions, and the regulations dictate that, all other factors being equal, the opinions of non-examining physicians merit less weight than those of examining or treating physicians. *See* 20 C.F.R. 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")

Another aspect of the ALJ's weighting of opinion evidence that raises concerns is the priority that he places on older opinions over newer ones. The ALJ gave "little weight" to Dr. Smith's 2012 opinions but gave "significant weight" to the same doctor's April 2009 opinion, expressed in a treatment note from Claimant's second visit, that Claimant should not lift over 40 pounds. The ALJ attributed his deference to the 2009 opinion to Dr. Smith's "medical specialty" as a cardiologist. (R. 31.) But Dr. Smith's specialty did not change in the years between 2009

and 2012. As Claimant's treating cardiologist from 2009 to 2012, Dr. Smith had a unique perspective of the progress of Claimant's coronary artery disease and peripheral vascular disease, including his procedures and hospitalizations, and was presumably in the best position to determine what exertions Claimant could bear. *See* 20 C.F.R. 404.1527(c)(2). Claimant repeatedly complained of chest pain, shortness of breath, and leg pain and weakness. (R. 591, 594, 597, 603–04.) In July 2012 Claimant's cardiac symptoms were severe enough to require repeat visits to the emergency department and to Dr. Smith, after which he was hospitalized and had a stent placed. (R. 719–22, 781, 812, 834–35, 856–55.) Dr. Smith was also aware of Claimant's carpal tunnel syndrome and arthritis of the spine. (R. 589, 611.) The ALJ does not appear to have seriously considered the possibility that the cardiologist's opinions changed as Claimant's medical condition worsened, which could result in a more-limited RFC for the later years than for the earlier years of the alleged disability period.

The ALJ displayed the same bias toward older opinions in his weighting of the three consultative examiners who examined Claimant in connection with his applications for benefits. He gave "some probative weight" to statements of Barry L. Fischer, M.D. and Sujatha Neerukonda, M.D., both of whom examined Claimant in 2007, while giving "little weight" to the findings of Elizabeth Brater, M.D., who examined Claimant in 2011. (R. 31, citing R. 391–406.) The ALJ has not adequately explained why he chose to supplant the professional opinion of a doctor who examined Claimant in 2011 with those of doctors who examined him four years earlier. The ALJ stated that Dr. Brater's opinions were inconsistent with her own clinical findings. This is unpersuasive, as Dr. Brater, as a physician, is in a better position to interpret her own clinical findings than is the ALJ. *See Clifford v. Apfel*, 227 F.3d at 870 ("ALJs must not

succumb to the temptation to play doctor and make their own independent medical findings.") (citation omitted).

It is true that, alongside the flawed reasoning detailed above, the ALJ provided other, sounder reasons for his weighting of the various expert opinions in Claimant's matter. For example, he rejected Dr. Smith's conclusion that Claimant needs to elevate his legs based on the total absence of any mention of leg elevation in Dr. Smith's treatment notes. (R. 31.) However, because the ALJ's analysis relies at least in part on serious misstatements of the law applicable to weighing opinion evidence, the Court cannot conclude with confidence that the ALJ's conclusions would be the same if he had applied the laws correctly. The matter must therefore be remanded for a reweighing of the opinion evidence.

**B.    On remand, the ALJ should re-evaluate Claimant's subjective symptoms statements**

The ALJ also made several errors in his analysis of Claimant's credibility. As an initial matter, the Court notes that the Social Security Administration recently issued a new Policy Interpretation Ruling regarding the evaluation of symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling, which does apply to matters on appeal, eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. However, the regulatory factors that ALJs must consider in evaluating the intensity, persistence, and limiting facts of an individual's symptoms remain unchanged, and applicable Seventh Circuit precedent still applies. *See* SSR 16-3p, 2016 WL 1119029 at ***7,** citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Cole v. Colvin*, No. 15-3883, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016).

The ALJ relied heavily on three factors to impugn Claimant's credibility: alleged gaps in the treatment record, Claimant's smoking, and Claimant's work history. Each of these raises concerns. First, it is permissible to consider a claimant's failure to pursue treatment for a condition as a sign that that symptoms may not be severe. *See* SSR 16-3p, 2016 WL 1119029, at *8-9; *see also* SSR 96-7p, at *7-8. However, an ALJ must not draw a negative inference about symptoms from a failure to seek treatment without first considering "possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Among the factors that might explain a gap in treatment is an inability to afford medical care.

The ALJ discredited Claimant in part because of gaps in his treatment history and noncompliance with medications. For example, he described Claimant's treatment history as "sparse" in 2009 and 2010. (R. 28.) This characterization is debatable. In those two years, Claimant visited at least seven times with his cardiologists at the Vascular Institute, Dr. Smith and Brian Bigelow, M.D., who monitored his cardiovascular disease and peripheral vascular disease, respectively. (R. 587, 591, 594, 597, 600, 603, 611.) He underwent a cardiac stress test in October 2010. (R. 536–38.) This quantity of specialized treatment, coupled with an emergency room visit for left-side numbness in December 2009, does not strike the Court as "sparse." (R. 521–28.)

The ALJ also pointed out that Claimant reported "not taking his medications" in February 2009. (R. 27–28.) The treatment note from that visit, Claimant's first with Dr. Smith, indicates that Claimant had for some period not been taking his medications "because he could not afford them," but that he was "currently getting them through Medicaid." (R. 587.) The ALJ dismissed Claimant's allegations that he could not afford treatment as follows: "Although he has suggested

that financial problems have precluded his consistent use of the proper medications for his cardiac condition, this rings particularly hollow in light of his on-going earnings and his ability to smoke two (2) packs of cigarettes a day." (R. 30.) Yet there is no evidence in the record that comprehensive medical care would cost less than cigarettes. More to the point, the ALJ's use, here and elsewhere in his opinion, of Claimant's smoking to impugn his credibility contravenes applicable law. The Seventh Circuit has recognized "the addictive nature of smoking" and has made it clear that ALJ's should not focus on a claimant's failure to quit smoking when determining if the claimant has been compliant with medical treatment. *Shramek v. Apfel,* 226 F.3d 809, 813 (7th Cir. 2000.) The ALJ repeatedly cited Claimant's smoking as evidence "that the symptoms may not have been as serious as has been alleged," writing that, in March 2006, Claimant "felt well enough to begin smoking again" and, "by June 2007 [he] was feeling well enough to increase his smoking to two (2) packs a day." (R. 27) This verges on nonsensical. One who is addicted to nicotine does not need to "feel well" in order to resume smoking after heart surgery.

The ALJ's reference to Claimant's earnings during the relevant period also bears mentioning. At least eight times in his opinion, the ALJ cited to Claimant's earnings history to support his findings regarding Claimant's credibility and RFC. (R. 22, 23, 26–30.) An ALJ must be careful when using a claimant's work activities as evidence he is not disabled. While the ability to perform the functions of paid work can indicate that a claimant's symptoms are not as severe as alleged, the ability to work part-time or to sustain employment with an "indulgent employer" does not disprove that someone is not disabled. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005)**;** *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003). The record does show that Claimant worked throughout the relevant period, 2004–2012, earning wages in excess

of $7,000 in most of those years, and amounts in excess of $16,000 in 2004 and 2005. (*Id.*) Only the 2005 figure exceeds the threshold that creates a presumption of Substantial Gainful Activity ("SGA"), which generally precludes a finding of disability. *See Fischer v. Barnhart*, 129 F. App'x 297, 302–03 (7th Cir. 2005). As of September 2011, Claimant reportedly was working for a "few hours" each day. (R. 307.) At his hearing, he claimed that he worked for his in-laws with accommodations that would not be permitted in the general job market. (R. 81–82.) The ALJ dismissed as unsupported his testimony that the work was sheltered. (R. 23.) Other than that, the ALJ did not inquire as to how many hours Claimant has worked at his various jobs or discuss any physical tasks that might be required of him there. The ALJ's conclusions flowed solely from Claimant's earning history, notwithstanding the fact that those earnings have not been at or above the SGA threshold since 2005. The ALJ therefore failed to build the requisite "logical bridge" from the income evidence to his conclusions. *Berger v. Astrue,* 516 F.3d at 544.

To be clear, the Court is not finding that the ALJ must credit Claimant's testimony and award benefits. Rather, the ALJ should evaluate the entire record and thoroughly explain the rationale that underlies whatever decision he ultimately makes in accordance with the guidance of SSR 16-3p. He should not rely on assumptions about Claimant's smoking to undercut his testimony about symptom severity or financial hardship. He should take care that any criticism of Claimant's testimony is specific and that any arguments based on gaps in Claimant's treatment record or on his work history are well-explained and supported by substantial evidence in the record.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 2, 2016